# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GEORGE R. SMITH,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | 2:09cv1264 |
| **MICHAEL J. ASTRUE,** ) | Electronically Filed |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## OPINION

### I. INTRODUCTION

Plaintiff, George R. Smith ("Smith"), brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433,1381-1382f. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The record has been developed at the administrative level. For the reasons set forth below, the Commissioner's decision will be affirmed.

### II. PROCEDURAL HISTORY

Smith protectively filed for DIB and SSI on June 28, 2007, alleging disability as of May 1, 2007. Record of *Smith v. Astrue*, 09-1264, 99-108 ("R."). Smith alleged disability due to lupus, gout, bursitis, poor balance, cirrhosis, hepatitis C and back pain. R. 11, 13-14, 99-108. The applications were administratively denied on September 20, 2007. R. 38-45. Smith responded by filing a timely request for an administrative hearing. R. 49.

On March 3, 2009, a hearing was held in Johnstown, Pennsylvania before Administrative Law Judge James J. Quigley ("ALJ") who appeared via video from Norfolk, Virginia. R. 19-34. Smith, who was represented by counsel, appeared and testified. R. 19-32. Joseph J. Bentivegna, an impartial vocational expert ("VE") also testified. R. 32-34.

In a decision dated March 27, 2009, the ALJ determined that Smith was not "disabled" within the meaning of the Act as his residual functional capacity ("RFC") did not prevent him from returning to his past relevant work as a machine shop maintenance man. R. 11-18. The Appeals Council denied Smith's request for review on July 27, 2009, thereby making the ALJ's decision the final decision of the Commissioner. R. 1-3. Smith commenced the present action on September 17, 2009. Doc. No. 1.

### III. STATEMENT OF THE CASE

Smith was fifty-eight years of age at the time of the hearing. R. 22. He has a high school equivalency diploma. R. 22-23. His past relevant work was as a machine shop maintenance man. R. 32, 112. Smith testified he did not operate machines. R. 31-33. The documentary record indicates that Smith suffers from multiple physical impairments. In his claim for benefits, Smith submitted evidence of physical impairments including hepatitis C, arthritis, gout, lupus, and back pain. R. 166, 186.

On September 4, 2007, at the Agency's request, Smith was examined by Victor Jabbour, M.D. R. 166-75. Smith was found to be in good general health. R. 168. He denied problems with shortness of breath, cough, or chest pain and had no complaints about his gastrointestinal or urinary tract. *Id.*

Physical examination revealed Smith's head, neck, eyes, ears, heart rate, mouth, and throat were normal. R. 168-69. Smith's arms and legs did not show weakness or limited range

of motion. R. 169. There was no swelling or tenderness in his feet. *Id.* Smith's neurological examination was normal, including motor system, reflexes, deep tendon reflexes, sensation, coordination, and ranges of motion. R. 170, 174-75. Dr. Jabbour noted that Smith could get on and off the examination table, walk on his heels and toes with a normal gait, and squat. R. 170.

Dr. Jabbour diagnosed Smith with 1) back pain secondary to arthritis and possible disc disease; 2) history of gouty arthritis; 3) history of hepatitis C; 4) lupus; and 5) possible high blood pressure. R. 170. Dr. Jabbour also completed a medical source statement of claimant's ability to perform work-related physical activities. R. 172-175. Dr. Jabbour assessed that Smith could stand and walk one hour or less; sit less than six hours; occasionally perform postural activities of bending, kneeling, stooping, crouching, balancing, and climbing; and his impairments were affected by heights, moving machinery, vibration, and temperature extremes. R. 172-73. Dr. Jabbour also assessed that Smith could lift and/or carry two-three pounds frequently and ten pounds occasionally. R. 172.

On September 20, 2007, Mary Ellen Wyszomierski, M.D., a state agency physician, reviewed Smith's record. R. 176-82. Dr. Wyszomierski assessed that Smith could lift fifty pounds occasionally and twenty-five pounds frequently. R. 177. She concluded that Smith could stand and/or walk for six hours and sit with normal breaks for six hours in an eight-hour workday. R. 177. Dr. Wyszomierski did not impose limitations in pushing/pulling or postural, manipulative, visual, or communicative activities. No environmental restrictions were noted. R. 178-79.

Dr. Wyszomierski noted that Smith was not on medications for hepatitis C, lupus, arthritis, or cirrhosis. R. 181. She found that Dr. Jabbour "relied heavily on [Smith's] subjective

3

reports of symptoms and limitations" and his assessment "is not consistent with all of the medical and non-medical evidence in the claim folder." R. 182.

On November 28, 2007, Smith was examined by Jill Constantine, M.D. R. 185-186. Smith's skin, head, ears, nose, throat, carotid arteries, heart, abdomen, arms, legs, and lymph nodes were normal. R. 185. His arms and legs were noted to have a full range of motion with no signs of edema. *Id.* Smith's reflexes were normal. *Id.* Dr. Constantine noted Smith's history of hepatitis C and that he refused further evaluation or work-up. R. 186.

In February 2009, Smith sought treatment at a Veterans Administration Medical Center ("VA"). R. 196-213. Smith's primary complaint was intermittent left shoulder pain and a history of falls. R. 200-03. Smith was evaluated by Dr. Rashida Mahmud, M.D. R. 200-213. Smith's neurological evaluation revealed no migraines, tremors, loss of memory, parasthesias, vertigo or confusion. R. 205. It was noted that Smith's gait was unstable, but there were no tremors. *Id.* Smith used a cane, but not regularly. *Id.* Dr. Mahmud noted Smith's skin, head, eyes, ears, nose, throat, heart, lungs, abdomen, and extremities were normal. *Id.* Smith had some limited left shoulder range of motion, but no redness or swelling. R. 200.

Smith's assessment/plan included an x-ray of his shoulder, referral to gastroenterology because of his hepatitis C, referral to the neurology clinic for his falls, and a colonoscopy in 2010. R. 206. The subsequent x-ray of Smith's shoulder was negative except for small calcification densities suggestive of tendonitis. R. 196.

### III.     STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d

Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than

5

simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194

(1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V. THE ALJ'S DECISION

The ALJ determined that Smith had not been under a disability within the meaning of the Act from May 1, 2007, through the date of his decision. R. 11. The ALJ found that Smith had not engaged in substantial gainful activity since May 1, 2007. *Id.*

At step two the ALJ determined that Smith had the severe impairment of "a small calcification of the left shoulder suggestive of tendonitis, with complaints of left shoulder pain." *Id.* He noted none of Smith's other conditions were apparent during his examinations and there were no objective findings of other impairments. R. 14. Further, there was no ongoing medical treatment for the alleged problems. *Id.* Due to "the lack of objective signs, symptoms, or findings", the ALJ concluded that there were no other medically determinable impairments despite Smith's allegations of lupus, gout, bursitis, poor balance, cirrhosis, hepatitis C, and back pain. R. 13-14.

Although Smith's calcification of the left shoulder with complaints of pain was found to be "severe," it did not meet or medically equal a listed impairment. R. 14. The ALJ determined that Smith had the residual functional capacity ("RFC") to perform the full range of medium work as defined by 20 C.F.R. § 404.1567(c) and 416.967(c). *Id.* He found that Smith was capable of performing his past relevant work as a machine shop maintenance man. R. 17. Therefore, the ALJ concluded that Smith was "not disabled" from May 1, 2007 through March 27, 2009. R. 11-18, 20 C.F.R. § § 404.1520(f), 416.920(f).

**IV.     DISCUSSION**

*A .     Substantial Evidence Supports the ALJ's Determination that a Small Calcification of the Left Shoulder with Complaints of Left Shoulder Pain Was the Only "Severe" Impairment*

Smith contends that the ALJ erred because medical evidence established that his hepatitis C, lupus, gout, bursitis, and poor balance should have been included at step two as "severe". The Commissioner argues that substantial evidence supports the ALJ's decision.

In reviewing the record for substantial evidence, this court cannot reweigh the evidence or substitute its conclusions for those of the fact finder. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Furthermore, it is proper to consider and review only those findings upon which the ALJ based his or her decision, and errors, omissions or gaps in the medical record may not be rectified by supplying additional findings from an independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli,* 247 F.3d at 44 n. 7. Therefore, the court's role is not to substitute its conclusions for the ALJ's, but to review the ALJ's decision to determine if it is supported by substantial evidence.

A claimant has the burden until step five to demonstrate that his impairments result in disabling functional limitations, including providing evidence that impairments are "severe." *See* 42 U.S.C. §423(d)(5)(A) ("a claimant will not be considered disabled unless he furnishes medical and other evidence required by the Commissioner"). Only after it is shown that he or she is unable to resume his or her previous employment does the burden shift to the Commissioner to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983); *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777. The Commissioner's denial at step two, like any other step in the sequential analysis, is upheld if supported by substantial evidence from the record as a whole. *McCrea v. Barnhart*, 370 F.3d 357, 360-61 (3d Cir. 2004).

The Regulations define a non-severe impairment as "[a]n impairment or combination of impairments ... [that] does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). While doubts are resolved in favor of the plaintiff, the plaintiff bears the burden to show he suffers from a severe impairment and to do so he must demonstrate something beyond a slight abnormality or a combination of abnormalities which would have no more than a minimal effect on an individual's ability to perform work-related activities. *McCrea*, 370 F.3d at 359. Therefore, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on the claimant's ability to work. *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir. 2003) (*citing* SSR 85-28). Although there may be contradictory evidence in the record, it is not cause

9

for remand or reversal of the Commissioner's decision if substantial support for the ALJ's determination exists. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

Although the Plaintiff's burden at step two is a minimal one, the ALJ's determination that Smith's impairments were not "severe" is supported by substantial evidence. The ALJ noted that, except for the small calcification of the left shoulder with complaints of left shoulder pain, none of the Smith's alleged impairments were supported by objective signs, symptoms, or findings in the medical record. R. 14. Mere identification of a medical condition does not establish entitlement to benefits; instead, a claimant must show that the impairment results in disabling limitations. *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990). Although physicians noted Smith had a history of hepatitis C and lupus, there was no documentation that these impairments produced limitations.

Dr. Jabbour's physical examination was unremarkable and "contained no objective findings of any such impairments." R. 14. Smith's examinations were consistently normal and no limitations were noted in the VA examinations in November 2007 and February 2009. R. 183-213. Indeed, none of Smith's physicians documented any limitations resulting from his impairments, except for his small calcification of the left shoulder suggestive of tendonitis, with complaints of left shoulder pain. R. 196. The ALJ accounted for this in finding that this impairment was "severe." R. 13.

The ALJ's conclusion that Smith did not have the "severe" impairments of lupus, gout, bursitis, poor balance, hepatitis C, or back pain is supported by substantial evidence because the record lacked objective signs, symptoms or findings supporting the existence of limitations from these conditions. Smith has failed to meet his burden of showing that the impairments produce

limitations which have more than a minimal affect on his ability to work.  *McCrea*, 370 F.3d at 357.  Consequently, the ALJ did not err in finding these impairments to be non-severe.

Smith also suggests that the ALJ erred in the weight he accorded Dr. Jabbour and Dr. Wyszomierski's assessments of his functional limitations because a treating physician's opinion should be given deference and controlling weight.  Plaintiff's Brief in Support of Motion for Summary Judgment, 9-10 *citing Dorf v. Bowen*, 794 F.2d 896 (3d Cir. 1986), *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986).  However, neither Dr. Jabbour nor Dr. Wyszomierski were treating physicians.  R. 166-75, 176-82.  Under the applicable regulation, a treating physician has or has had an "ongoing relationship" with the claimant[1].  20 C.F.R. § 404.1502.  Dr. Jabbour physically examined Smith one time in order to conduct his consultative examination.  R. 166-75.  Dr. Wyszomierski was a non-examining consultative examiner.  R. 176-182.  Therefore, neither physician is considered a treating physician and their opinions do not have to be afforded additional or significant weight.  20 C.F.R. § 404.1502.

---

[1] 20 C.F.R. §404.1502 defines a "treating source" as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

The ALJ discussed Dr. Jabbour's assessment of Smith's functional limitations, but declined to give it substantial weight because it was inconsistent with his physical findings. R. 15. An ALJ may properly assess the credibility of medical opinion evidence and may give little or no weight to internally inconsistent or unsupported opinions. 20 C.F.R. § § 404.1527(c)(2), (d)(4), 416.927(c)(2), (d)(4). Dr. Jabbour found Smith to be in good general health and noted throughout his examination that Smith's physical attributes were "normal", but assessed him with very restrictive functional limitations. R. 166-170. The ALJ afforded Dr. Jabbour's assessment minimal weight because "the doctor's physical examination of the claimant is normal, with no objective findings of any impairments." R. 17. An ALJ is entitled to rely not only on what the record contains, but what it does not. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). Dr. Jabbour's functional assessment was a single report, unsupported by objective clinical findings. The ALJ's decision to afford Dr. Jabbour's assessment minimal weight was supported by substantial evidence. 20 C.F.R. § § 404.1527(c)(2), (d)(4), 416.927(c)(2),(d)(4).

The ALJ gave greater weight to Dr. Wyszomierski's assessment because it was consistent with the record, "especially the lack of objective findings upon physical examination and diagnostic study and the lack of ongoing medical treatment[2]." R. 17. An ALJ may choose to credit a non-treating, non-examining physician over treating or examining physicians when the opinions conflict, but "cannot reject evidence for no reason or for the wrong reason." *Morales v.*

---

[2] *See* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

*Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ discussed in detail his decision to credit Dr. Wyszomierski over Dr. Jabbour and his reasons for doing so. R. 15. He also noted that Drs. Constantine and Mahmud's normal physical findings supported his determination that the majority of Smith's alleged impairments were not severe. R. 15-16. Furthermore, Smith's records from the VA did not include any limitations or unusual physical findings beyond some limited left shoulder range of motion. R. 194-203.

The ALJ discussed his reasoning for affording Dr. Wyszomierski's assessment greater weight than Dr. Jabbour's and did not reject any evidence for no reason or for the wrong reason. R. 14-16. Accordingly, substantial evidence supports the weight the ALJ gave to medical findings and assessments. 20 C.F.R. § §404.1527(f)(1), 416.927(f)(1); Social Security Ruling ("SSR") 96-6p.

Smith also argues that the ALJ erred because there must be medical evidence to disprove a claimant's testimony as to pain and there is no evidence to disprove his testimony. Of course, pain may be disabling under the Act. *Green v. Schweiker*, 749 F.2d 1066, 1069-71 (3d Cir. 1984). However, "there must be medical signs and findings, established by medically acceptable techniques, which could reasonably be expected to produce the pain or other symptoms alleged" before such testimony must be given significant weight. *Id.* Conversely, an ALJ may discredit a claimant's subjective complaints when there is contradictory medical evidence and the ALJ explains the basis for rejecting the complaints. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). The ALJ concluded that when contrasted with the record as a whole, "including the findings upon physical examination and diagnostic study". . . "his subjective allegations are found to be exaggerated and not fully credible to the extent that he alleges to be disabled by them". . . . R. 14. He proceeded to discuss all of the medical evidence

13

and how it did not provide any objective support for Smith's complaints. R. 14-16. Because his decision contained a discussion of the record and other factors which he found to undermine persuasively Smith's complaints of pain, the ALJ did not err in finding Smith's subjective complaints were not fully credible. *Mason*, 994 F.2d at 1067-68.

*B.     Substantial Evidence Supports the ALJ's Determination that Smith Could Return to His Past Relevant Work*

Smith's argument that the ALJ erred by failing to explain a "conflict" between the VE's description of his past relevant work and his testimony about it is without merit. The ALJ had sufficient information from Smith's testimony to determine his past relevant work. R. 23-24. Furthermore, since the burden of production remained on Smith at step four, vocational testimony was not required. *Sykes*, 228 F.3d 259 (3d Cir. 2000), SSR 82-62.

Nevertheless, the ALJ elicited VE testimony about Smith's past relevant work. R. 32-34. The VE testified that Smith's past work of maintenance man in a machine shop is listed as medium work, with a specific vocational preparation ("SVP") of 7 as customarily performed in the national economy. R. 32. The VE explained that Smith's past work as actually performed was medium work, semiskilled-lower, with an SVP of 5 since Smith did not operate machinery. *Id.* The Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

Here, the ALJ discussed the difference between Smith's and the VE's testimony and the SVP levels in compliance with SSR 00-4p. R. 17. The VE testified that Smith's past relevant work as customarily performed was medium exertion and skilled as it required the operation of machinery, but Smith's past relevant work as actually performed was medium exertion and semi-

14

skilled. *Id.* The ALJ concluded that since Smith's RFC allowed him to perform the full range of medium work, his "impairments did not cause any limitation of function that would prevent him from performing his past relevant work as a machine shop maintenance as he actually performed it." *Id.* Because no VE testimony was required and further the ALJ discussed the differences between the VE's testimony and Smith's, Smith's argument is without merit.

Finally, despite Smith's contention, the ALJ did not ask, nor was he required to ask, the VE a hypothetical question. *See Jones*, 364 F.3d at 503 (the burden only shifts to the Commissioner at step five when he must demonstrate the claimant is capable of performing other available work in order to find claimant disabled.). Since the ALJ was able to elicit Smith's testimony regarding his past relevant work and found that his RFC enabled him to return to the position, the decision ended at step four. R. 17. Therefore, Smith's argument the ALJ posed a deficient hypothetical question at step five is without merit.

## V.     CONCLUSION

It is well-settled that disability is not determined merely by the presence of impairments, but by the effect that the impairments have on an individual's ability to perform substantial gainful employment. *Jones v. Sullivan*, 954 F.2d 129 (3d Cir. 1991). In making assessments of the impact impairments have on a particular individual's ability to do work-related activities, determinations of credibility are committed to the sound discretion of the ALJ and must be upheld where there is substantial evidence to support them. *Hartranft*, 181 F.3d at 358.

Here, the ALJ reasonably concluded that Smith's only severe impairment was a small calcification of the left shoulder suggestive of tendonitis, with complaints of left shoulder pain. Therefore, the ALJ did not err in deciding to exclude Smith's other alleged impairments at step two.

15

In order to prove disability, Smith had to demonstrate the existence of a medically determinable disability that precludes him from returning to his past relevant work (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Smith did not meet this burden. Specifically, he failed to prove the limitations caused by his impairments prevented him from returning to his prior position. The ALJ's determination that Smith was not disabled because he could return to his past relevant work was supported by substantial evidence.

Accordingly, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted and the Commissioner's decision will be affirmed.

Date: August 30, 2010

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: E. David Harr, Esquire
203 South Main Street
Greensburg, PA 15601

Jessica Lieber Smolar, AUSA
United States Attorney's Office
Suite 4000
U.S. Post Office & Courthouse
700 Grant Street
Pittsburgh, PA 15219